IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Cavis N. Owens,<br>for Gerald D. Metcalf, (Deceased),<br><br>                            Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart,<br>Commissioner of Social Security,<br><br>                            Defendant. | Civil Action No. 8:04-2351-PMD-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Cavis N. Owens ("the plaintiff"), brought this action on in a representative capacity on behalf of the original claimant Gerald D. Metcalf ("the claimant"), pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The claimant filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on September 20, 1999, alleging that he became disabled between May 14, 1984, the initial alleged onset date of his disability,

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

and December 31, 1989, the date he was last insured for DIB, due to spinal disorders. (Tr. 306.) His application was denied initially and on reconsideration by the Social Security Administration. His request for a hearing, filed on November 10, 1999, was dismissed by the Administrative Law Judge ("ALJ"). (Tr. 13, 71-74.) The claimaint then requested review by the Appeals Council, which on October 24, 2002, remanded the case for further proceedings and a decision by the ALJ. (Tr. 13, 77-79.)

Unfortunately, the claimant died on July 6, 2003 prior to the ALJ hearing, due to cardiac arrhythmia. (Tr. 280.) The plaintiff in this case became the substitute party thereafter. A hearing was held on February 11, 2004, at which the plaintiff and a vocational expert testified. (Tr. 295-318.) At the hearing, the alleged onset date of disability was amended to February 1, 1988. (Tr. 306.)

On March 24, 2004, the ALJ issued an unfavorable decision, finding the claimant was not disabled between February 1, 1988, the alleged onset date of his disability, and December 31, 1989, the date he was last insured for DIB (hereinafter "the relevant period"), because he had the residual functional capacity to perform a range of light work and could perform other work that existed in significant numbers in the national economy. (Tr. 13-19.) On December 19, 2003, the Appeals Council denied the plaintiff's request for review (Tr. 5-7), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review under section 205(g) of the Act. *See* C.F.R. § 404.981. The plaintiff then filed this action on behalf of the claimant for judicial review.

In making his determination that the claimant is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge (verbatim):

> 1. The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits through December 31, 1989, but not thereafter.

2

2. The claimant did not engage in substantial gainful activity after the alleged onset of disability.

3. The claimant had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. §§ 404.1527 and 416.927).

6. During the period at issue, the claimant had the residual functional capacity to perform work with restrictions that required no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no pushing or pulling over 20 pounds; no standing and/or walking over 6 hours in an 8-hour workday; limited stooping, twisting, crouching, kneeling and climbing of stairs or ramps; no balancing or climbing of ladders or scaffolds; and avoidance of hazards such as unprotected heights, vibration, and dangerous machinery. Due to pain, he would have been limited to simple, routine work in a low stress, supervised environment requiring no interaction with the public or "team"-type interaction with coworkers.

7. The claimant was unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

8. The claimant was a "younger individual" (20 C.F.R. §§ 404.1563 and 416.963).

9. The claimant had a GED (20 C.F.R. §§ 404.1564 and 416.964.)

10. The claimant had no transferable skills to other work within his residual functional capacity.

11. The claimant had the residual functional capacity to perform a significant range of light work (20 C.F.R. §§ 404.1567 and 416.967).

12. Although the claimant's nonexertional limitations did not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could have performed. Examples include the unskilled, light jobs of small parts assembler, electrical assembler, and nut and bolt assembler, with over 400,000 such jobs in the national economy.

> 13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through December 31, 1989, when his insured status expired (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

## BACKGROUND

The original claimant, Gerald D. Metcalf was born March 14, 1953 and, therefore, was 46 years old at the time he filed his application for benefits on September 16, 1999. The plaintiff was 34 years old at the time he allegedly became disabled and 36 years old as of December 31, 1989, the date he was last insured for disability insurance. (Tr. 26, 85.) He served in the United States Army from August 15, 1972 until May 15, 1985. (Tr. 26-28.)

As stated, the claimant alleged that he became disabled on February 1, 1988, due to back problems and Post-Traumatic Stress Disorder. The claimant underwent two back surgeries in 1977 and 1986, respectively. A functional assessment performed on January 29, 1988, found that the claimant "could not be gainfully employed due to low back, left leg, and 40% disability." (Tr. 192.) The vocational rehabilitation specialist who performed the assessment encouraged the claimant to seek a determination of total disability from the Veteran's Administration. *Id.* In January 1989, the Veteran's Administration increased the claimant's disability rating to 60% because of ongoing residual postoperative pain. (Tr. 58, 265.) Finally, on November 2, 1992, the Veteran's Administration concluded that the claimant's service connected disorders rendered him completely "unemployable." (Tr. 58-65, 268-76.)

On October 15, 1999, the claimant was diagnosed with Post-Traumatic Stress Disorder, based on the tragic death of his wife and children in 1983. (Tr. 279.)

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) assessing the claimant's credibility; (2) assessing the plaintiff's credibility; and (3) failing to properly evaluate the plaintiff's RFC. The Court will address each alleged error in turn.

### I.    THE CLAIMANT'S CREDIBILITY

The plaintiff first contends that the ALJ failed to perform an evaluation of the original claimant's credibility. As stated, the original claimant died before the ALJ hearing and, therefore, gave no live testimony for the ALJ's consideration. The plaintiff, however, cites

to three examples of written statements made by the original claimant, which the ALJ failed to consider. (*See* Tr. 24, 26, 59.) The first statement appears in the claimant's request for reconsideration and states as follows: "I have sent you doctor reports and rehabilitation occupational therapy and educational [indecipherable] that said I was total [sic] unemployable." (Tr. 24.) The second statement appears in the claimant's application for disability benefits. It simply reads, "I am still disabled." (Tr. 26.) The court disagrees with plaintiff that any credibility assessment could be made of these statements. The first statement is not even the opinion of the claimant but rather his representation concerning the opinion of his physicians. The second is simply the claimant's own belief as to the ultimate issue of disability, which, in the absence of more testimony, requires no deference. *See Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996).[2]

It is unfortunate that the claimant died prior to the hearing but the ALJ did not err in failing to make a credibility determination where none could be made.

## II.    THE PLAINTIFF'S CREDIBILITY

The plaintiff also contends that no credibility determination was made regarding his testimony at the ALJ hearing. The Court disagrees. The plaintiff testified at the hearing concerning his observations of the claimants' functional capacity and limitations during the relevant period. (Tr. 311-13.) The ALJ gave full weight to that testimony when he found that the "claimant was 'fidgety' and would not sit long before he said he had to get up and move around." (Tr. 15.) This finding is consistent with the plaintiff's testimony at the hearing (Tr. 311-13) and, therefore, indicates that the ALJ found the testimony credible. Accordingly, the plaintiff's assignment of error is without merit.

---

[2] The plaintiff cites to page 59 of the Record but there is no statement of the claimant on that page. The plaintiff also claims that the ALJ should have considered statements made by the claimant to his physicians. However, the plaintiff does not cite to any portion of the record that contains any actual statements by the claimant, which might be assessed.

The plaintiff argues, however, that the ALJ had an obligation to further develop the record by asking additional questions of the plaintiff. It is true that "[t]he ALJ is required by 20 C.F.R. s 404.927 to inquire fully into each issue. He is held to a high standard in discharging this fact-finding requirement." *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980); *Snyder v. Ribicoff*, 307 F.2d 518 (4th Cir. 1962). The performance of this duty is particularly important when a claimant appears without the assistance of counsel. *See Marsh*, 632 F.2d at 299. Under such circumstances, the ALJ should "'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts,'" being "'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Id.* (quoting, respectively, *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 43 (2nd Cir. 1972) and *Rosa v. Weinberger*, 381 F. Supp. 377, 381 (E.D.N.Y.1974)). "Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh*, 632 F.2d at 299.

In *Marsh*, the claimant was illiterate and lacked an "understanding of the evidence necessary to develop the critical issues." *Id.* The Fourth Circuit determined that the absence of legal representation further compounded these inadequacies. *Id.* The Court specifically found that "[c]ompetent counsel could have obtained testimony from Dr. May and secured all relevant hospital records." *Id.* The Fourth Circuit concluded that it "is inescapable that, unassisted, Marsh was unable to present his case adequately" and, therefore, the ALJ should have elicited the necessary evidence. *Id.*

In this case, although the plaintiff was not represented by counsel, he does not contend that medical evidence is in short supply or missing from the record. In fact, the record in that regard is voluminous. Instead, the plaintiff simply contends that the ALJ should have elicited additional testimony from him concerning the claimants limitations. The plaintiff, however, gave testimony as to the claimant's limitations during the relevant period

and does not explain what other evidence should have been elicited or how such evidence would have effected the decision of the ALJ.  As the ALJ fully credited the testimony of the plaintiff and the record is undeniably thorough in all other respects, it is simply unclear what additional testimony should have been explored.   Moreover, even if the ALJ should have additionally questioned the plaintiff, there is no evidence that the plaintiff was prejudiced as a result of such failure.  *See Marsh*, 632 F.2d at 299 ("Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, *and such failure is prejudicial to the claimant*, the case should be remanded." (emphasis added)).

Accordingly, the ALJ did not err in his assessment of the plaintiff.

### III.     RESIDUAL FUNCTIONAL CAPACITY

The plaintiff alleges that the ALJ did not provide an adequate explanation for his determination of the claimant's Residual Functional Capacity ("RFC").  To that end, the plaintiff contends that the ALJ did not consider (1) the findings of the Veteran's Administration; (2) the claimant's subjective complaints of pain;[3] or (3) the medical opinion that the claimant suffered from Post-Traumatic Stress Syndrome.

As to the plaintiff's contention that the ALJ simply did not consider the Veteran's Administration ("VA") records, there can be no dispute but that he did. (Tr. 15-16.) The ALJ specifically summarized the VA records and made specific citation to portions of the same. *Id.*  The Court, however, agrees with the plaintiff that the ALJ did not perform a sufficient analysis of the VA's records or provide sufficient justification for his rejection of the disability assessments contained therein.  Although not bound by the Veterans Administration's

---

[3] For essentially the same reasons that the Court rejected the plaintiff's argument regarding the ALJ's credibility determination, the Court rejects any argument that the ALJ did not consider the claimant's subjective complaints of pain.  To the extent any such complaints exist, they are part of the Veteran's Administration's records and will be considered by the ALJ in accordance with the Court's Order as discussed *infra*. Otherwise, the untimely death of the claimant has prohibited the rendering of any subjective testimony of pain for which the ALJ could have been held responsible to examine.

decision or assessments, *see* 20 C.F.R. § 404.1504, the ALJ must articulate reasons for his rejection of another agency's decision. *Morrison v. Apfel*, 146 F.3d 625, 628 (8 th Cir. 1998). This articulation is necessary to permit "reasoned review by the courts." *Id.*

Here, the Board of Veterans' Appeals ("Board"), in a Decision dated November 22, 1992, determined that the plaintiff was totally disabled. (Tr. 65.) Although that decision was made after December 31, 1989, the claimant's last insured date, the Board's decision was substantially based on the 1988 assessment of the VA (Tr. 63-64) that the claimant could not be gainfully employed and should file for 100% disability (Tr. 192). Obviously, the 1988 functional assessment was made during the relevant period.

In his decision, the ALJ gave "little weight" to the 1988 VA assessment because it did not contain specific findings as to the "claimant's demonstrated ability to lift and carry, sit, stand, bend squat, etc." (Tr. 15.) The Board, however, in its 1992 decision specifically noted that the 1988 VA assessment was based on the discomfort experienced by claimant in "performing a number of tasks, which involved activities such as climbing, standing or sitting." (Tr. 64.) The ALJ did not consider this basis of the Board's 1992 decision but instead summarily dismissed the Board's determination of disability for having been made 3 years after the claimant's last insured date. (Tr. 16.) Notwithstanding the Commissioner's contention that the VA did not find the claimant disabled until 1992, the Board's 1992 decision can almost be read as an *ex post facto* determination of the claimant's disability in 1988. *Id.* The ALJ's rejection of the Board's decision is simply too cursory considering the critical fact that the Board's conclusion of complete disability was based on assessments of the claimant admittedly made by the VA during the relevant period.

Accordingly, the ALJ should reexamine all of the VA records, including the 1992 decision of the Board, specifically, and articulate more clearly his analysis of those materials. The Court is frankly doubtful that substantial evidence exists to conclude differently than the VA, under the circumstances. Out of an abundance of caution, however,

the Commissioner should have an opportunity to analyze more thoroughly the VA records and clarify the reasons for rejecting such determinations, if at all.

The plaintiff further argues that the ALJ erred in his RFC assessment by dismissing the opinion of a treating physician that the claimant suffered Post-Traumatic Stress Disorder ("PTSD") during the relevant period. The Court, however, disagrees that the PTSD opinion, assessed in November 22, 2000, is necessarily evidence that the disorder existed during the relevant period.

Although the precipitating cause of the disorder, the tragic death of his family in 1983, occurred prior to his last insured date and although it could be inferred that the disorder was manifest during the relevant period, the November 22 letter does not state as much. Therefore, while a permissible inference, the existence of the disorder during the relevant period is simply not a necessary one. The ALJ articulated reasons for rejecting the opinion as evidence of disability during the relevant period (Tr. 16) and the Court cannot say that those reasons constitute less than substantial evidence for the ALJ's decision. The uncertainty in the November 22 letter justified the ALJ's conclusion. *See Young v. Bowen*, 858 F.2d 951 (4th Cir. 1988). ("Doctor Diehl's opinion that Young became disabled "in or about 1978" although suggestive of that fact lacks sufficient certainty to overcome the deference to which the Secretary's contrary interpretation of the evidence is entitled.") The ALJ was not re-diagnosing the claimant or disregarding the opinion of the physician in the absence of contrary medical evidence, as the plaintiff suggests, but rather simply interpreting whether or not the opinion qualified as evidence of PTSD during the relevant period. He concluded that it did not. The Court will not disturb this determination. *See id.*

Notwithstanding, the ALJ must further analyze the VA records and articulate more specific reasons for accepting or rejecting the various assessments and determinations of the VA which are suggestive, if not dispositive, of disability during the relevant period.

11

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court concludes that certain of the ALJ's findings are not supported by substantial evidence and the decision of the Commissioner should be reversed and the matter remanded for further consideration regarding the credibility of the plaintiff.

Therefore, it is recommended that the Commissioner's decision be reversed, with a remand of the cause to the Commissioner for further proceedings as set forth above.

                                                s/Bruce H. Hendricks
                                                United States Magistrate Judge

December 28, 2005
Greenville, South Carolina