IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Cavis N. Owens, )<br>for Gerald D. Metcalf, (Deceased), )<br>    )<br>    Plaintiff )<br>    )<br>v.     )<br>    )<br>Jo Anne Barnhart, )<br>Commissioner of Social Security, )<br>    )<br>    Defendant. )<br>_____ ) | C.A. No.: 8:04-2351-PMD-BHH<br><br>**<u>ORDER</u>** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, codified at 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner of Social Security's ("Commissioner") final decision, which denied Gerald D. Metcalf's ("Metcalf") claim for Disability Insurance Benefits ("DIB"). The record includes a Report and Recommendation ("R&R") of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), recommending that the Commissioner's final decision be reversed and remanded for further proceedings. The Commissioner timely objected to the Magistrate Judge's recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's R&R within ten days after being served with a copy).

## **<u>BACKGROUND</u>**

### **I.    Procedural History**

On September 20, 1999, claimant Metcalf filed an application for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, alleging disability between May 14, 1984, and December 31, 1989, due to spinal disorders. (Tr. at 306.) The Social Security Administration denied his application initially and on reconsideration. Claimant Metcalf filed a request for a hearing on

November 10, 1999, but the Administrative Law Judge ("ALJ") dismissed this request. (Tr. at 13, 71-74.) The claimant then requested review by the Appeals Council, which remanded the case on October 24, 2002, for further proceedings and a decision by the ALJ. (Tr. at 13, 77-79.)

Unfortunately, the claimant died on July 6, 2003, prior to the hearing, due to cardiac arrhythmia. (Tr. at 280.) Therefore, Plaintiff Cavis N. Owens ("Owens"), the claimant's cousin and personal representative, became a substitute party. On February 11, 2004, a hearing was held at which Owens and a vocational expert ("VE") testified. (Tr. at 295-318.) At the hearing, the alleged onset date of disability was amended to February 1, 1988. (Tr. at 306.)

On March 24, 2004, the ALJ issued an unfavorable decision, finding that the claimant was not disabled between February 1, 1988, the alleged onset date of disability, and December 31, 1989, the date the claimant was last insured for disability insurance benefits. Specifically, the ALJ found that the claimant had the residual functional capacity ("RFC") to perform a range of light work and that a significant number of these jobs existed in the national economy. (Tr. at 13-19.) By its action dated May 21, 2004, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Tr. at 4-7.) On July 16, 2004, Plaintiff Owens filed the present action on behalf of Metcalf, the original claimant.

## II.     Medical Evidence

The original claimant, Metcalf, was born on March 14, 1953, and was 46 years old at the time he filed his application for benefits on September 16, 1999. Metcalf was 34 years old at the time he alleges that his disability began and 36 years old as of December 31, 1989, the date he was last insured for disability insurance benefits. (Tr. at 26, 85.) Metcalf earned a GED, and he served

in the United States Army from August 15, 1972, until May 15, 1985. (Tr. at 26-28.)

Claimant alleges disability due to back problems and post-traumatic stress disorder. He underwent two back surgeries in 1977 and 1986, respectively. A functional assessment performed on January 29, 1988, found that the claimant "cannot be gainfully employed due to low back, left leg, and 40% disability." (Tr. at 192.) In January of 1989, the Veterans' Administration increased the claimant's disability rating from 40 percent to 60 percent because of ongoing residual post-operative pain. (Tr. at 58, 265.) Finally, on November 2, 1992, the Board of Veterans' Appeals granted a "total disability rating" and concluded that the claimant's service-connected disorders rendered him completely "unemployable." (Tr. at 58-65, 268-76.) According to a letter dated November 22, 2000, psychological evaluations of the claimant on October 3, 16, and 25 of 2000 supported a diagnosis of post traumatic stress disorder, stemming from the tragic death of his wife and children in 1983. (Tr. at 279.)

## **DISCUSSION**

### I.     **Magistrate Judge's R&R**

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court has reviewed the entire record, including the R&R and the Commissioner's objections. Pursuant to this review, the court concludes that the Magistrate Judge accurately detailed the facts at issue and applied the correct principles of law.

Accordingly, the court adopts the R&R and incorporates it into this Order.

## II. Standard of Review

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## III. Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination

involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

*Mastro*, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. *See Walls*, 296 F.3d at 290.

Applying this framework, the ALJ found that the claimant did not engage in substantial gainful employment after the alleged onset date of disability. (Tr. at 18, Finding 2.) Second, the ALJ found that the claimant had lumbar disc disease, a severe impairment. (Tr. at 14, 18, Finding 3.) Third, the ALJ found that "the claimant's medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4." (Tr. at 18, Finding 4.) Fourth, the ALJ found that the claimant was unable to perform any of his past relevant work. (Tr. at 18, Finding 7.) Fifth, the ALJ found that the claimant had the residual

functional capacity to perform a significant range of light work and that a significant number of these jobs existed in the national economy. (Tr. at 19, Findings 11, 12.) Accordingly, the ALJ found that the claimant was not under a "disability" during the relevant time period. (Tr. at 19, Finding 13.)

## IV.     Analysis

In the Complaint, Plaintiff Owens asserts that the ALJ erred by (1) failing to perform any evaluation of Plaintiff's or the claimant's credibility and (2) failing to provide an adequate explanation as to the assessment of claimant's RFC. Specifically, with regard to the ALJ's assessment of claimant's RFC, Plaintiff contends that the ALJ did not consider (1) the findings of the Veteran's Administration ("VA"), (2) the claimant's subjective complaints of pain, and (3) the medical opinion that the claimant suffered from post-traumatic stress disorder.

The court first briefly addresses Plaintiff's argument that the ALJ failed to perform a credibility analysis. Second, the court addresses Plaintiff's argument that the ALJ failed to perform a proper RFC assessment, including the Commissioner's objection to the Magistrate Judge's finding that the ALJ did not perform a sufficient analysis of the VA records.

### A.     Credibility Evaluation

#### 1.     Claimant Metcalf

In her report, the Magistrate Judge concludes that the ALJ did not err in failing to evaluate the claimant's credibility. The court agrees. First, as previously noted, the claimant died before the hearing, and thus, he did not testify at the hearing. However, Plaintiff Owens asserts that the ALJ

6

should have considered statements and comments made by the claimant.[1]  In support of this assertion, Plaintiff cites to three pages in the transcript (pages 24, 26, and 59).  (Pl. Brief at 10.)

The first page to which Plaintiff refers is the claimant's request for reconsideration filed October 18, 1999, which states as follows: "I have sent you doctor reports and rehabilitation occupational therapy and education [indecipherable] that said I was totally unemployable."  (Tr. at 24.)  The second statement to which Plaintiff refers appears in the claimant's application for DIB and simply states, "I am still disabled."  (Tr. at 26.)  Third, Plaintiff refers to page 59 of the record, but the claimant makes no statement on that page.

Overall, the court disagrees with Plaintiff that the ALJ should have, or could have for that matter, evaluated the claimant's credibility based on those statements.  The first statement Plaintiff made in his request for reconsideration is only a characterization of his physicians' opinions.  The second statement is simply the claimant's belief as to the issue of disability, which requires no deference in the absence of testimony.  And as previously mentioned, the third page to which Plaintiff refers contains no statement of the claimant.  Thus, in light of the lack of testimony from the claimant, the court agrees with the Magistrate Judge that "the ALJ did not err in failing to make a credibility determination where none could be made."  (R&R at 7.)

### 2. Plaintiff Owens

Moreover, with respect to the ALJ's treatment of Plaintiff Owens's testimony, the court also agrees with the Magistrate Judge that the ALJ gave full weight to Owens' testimony when he noted that, "[a]ccording to the testimony, during the period at issue, the claimant was 'fidgety' and would

---

[1] Plaintiff claims that the ALJ should have considered statements made by the claimant to his physicians; however, Plaintiff does not cite to any portion of the record that contains actual statements made by the claimant to his physicians.

not sit long before he had to get up and move around." (Tr. at 15.) As the Magistrate Judge concluded, this statement in the ALJ's report is consistent with Owens' testimony and indicates that the ALJ, therefore, found Owens' testimony to be credible.[2] (Tr. at 311-13.) Accordingly, the court finds Plaintiff's argument without merit.

In addition to arguing that the ALJ failed to evaluate his credibility, however, Plaintiff also argues that the ALJ failed to properly develop his testimony. Specifically, Plaintiff states, "despite having a substitute party at the hearing that was familiar with the original claimant and his impairments during the relevant period, the ALJ did not inquire to any extent about what knowledge Mr. Owens had that could shed light on the nature of Mr. Metcalf's disabilities." (Pl. Brief at 12.)

The ALJ must fully inquire into each issue for adequate development of the record. *See Marsh v. Harris*, 632 F.2d 296, 298 (4th Cir. 1980) ("The ALJ is required by 20 C.F.R. § 404.927 (1979) to inquire fully into each issue. He is held to a high standard in this fact-finding requirement") (citation omitted). Moreover, "[t]he performance of this duty is particularly important when a claimant appears without the assistance of counsel." *Id*. In this case, however, although Plaintiff was not represented by counsel, he does not contend that medical evidence in the record is missing or inadequate, and as the Magistrate Judge correctly noted, the record is replete with medical evidence. Rather, Plaintiff claims only that the ALJ should have elicited more testimony from him concerning the claimant's limitations. However, Plaintiff does not explain what additional testimony or evidence the ALJ should have elicited, or demonstrate how such additional testimony or evidence would have affected the ALJ's decision. Accordingly, the court concludes that the ALJ

---

[2] In Plaintiff's Brief, Plaintiff states, "[a]dmittedly, Mr. Owens provided very little in the way of direct testimony to describe Mr. Metcalf's impairments during the relevant time in question." (Pl. Brief at 11.)

8

did not err with respect to Plaintiff's testimony.

### B. Residual Functional Capacity

Plaintiff alleges that the ALJ erred by failing to provide an adequate explanation as to the assessment of claimant's RFC. Specifically, Plaintiff contends that the ALJ did not consider (1) the findings of the Veteran's Administration ("VA"), (2) the claimant's subjective complaints of pain, and (3) the medical opinion that the claimant suffered from post-traumatic stress disorder.

The Magistrate Judge concluded in her R&R that although the ALJ did consider the VA records, he did not perform a sufficient analysis of those records or provide sufficient justification for his rejection of the disability assessments contained therein. (R & R at 9.) However, the Magistrate Judge rejected Plaintiff's remaining arguments, namely, that the ALJ did not consider the claimant's subjective complaints of pain or the medical opinion diagnosing post traumatic stress disorder.[3]

#### 1. The Commissioner Objections

The Commissioner objects to the Magistrate Judge's determination that the ALJ did not perform a sufficient analysis of the VA records. Specifically, the Commissioner argues that "the

---

[3] The court agrees with the Magistrate Judge that to the extent the claimant's subjective complaints of pain exist, they are part of the VA records to be reexamined more thoroughly by the ALJ on remand. "Otherwise, the untimely death of the claimant has prohibited the rendering of any subjective testimony of pain for which the ALJ could have been held responsible to examine." (R&R at 9, n. 3.) Moreover, with respect to Plaintiff's argument that the ALJ erred in failing to consider a treating physician's opinion that the claimant suffered from post traumatic stress disorder at the relevant time period, the court again agrees with the Magistrate Judge that the physician's letter dated November 22, 2000, is not necessarily evidence that the claimant suffered from post traumatic stress disorder during the relevant time period. Accordingly, the court will not disturb the ALJ's determination that this opinion did not qualify as evidence of post traumatic stress disorder during the relevant time period.

9

ALJ explicitly considered the 1998 and 1992 VA assessments in his decision and properly discounted them." (Obj. at 2.) Moreover, the Commissioner objects to the Magistrate Judge's reliance on *Morrison v. Apfel*, 146 F.3d 625 (8th Cir. 1998).

In *Morrison*, the Eighth Circuit Court of Appeals reversed and remanded the District Court's grant of summary judgment affirming the Social Security Administration's decision to deny Morrison's application for disability insurance benefits. *Id*. at 626. Of particular import to the case *sub judice* is the *Morrison* court's finding that the ALJ should have addressed the VA determination that Morrison was permanently and totally disabled. *Id*. In *Morrison*, the court states:

> It is true that a disability determination is not binding on an ALJ considering a Social Security applicant's claim for disability insurance benefits. We think, however, that the VA finding was important enough to deserve explicit attention. We agree with other courts that findings of disability by other federal agencies, even though they are not binding on an ALJ, are entitled to some weight and must be considered in the ALJ's decision.
>
> . . . If the ALJ was going to reject the VA's finding, reasons should have been given, to enable a reasoned review by the courts.

*Id.* (citations omitted.)

In his Objections, the Commissioner notes a key factual difference between *Morrison* and the present case, namely, that the ALJ in *Morrison* did not even mention the VA records, whereas the ALJ in the present case did mention the VA records.[4] *See Morrison*, 146 F.3d at 627 ("Notably, the ALJ never addressed the report by the VA doctor that Morrison could not work and was entitled to a government pension."). However, although the facts of the present case admittedly are not the same as those in *Morrison*, the court does not find error in the Magistrate Judge's reference to

---

[4] The Magistrate Judge notes that there is no dispute that the ALJ did consider the VA records, stating: "The ALJ specifically summarized the VA records and made reference to portions of the same." (R&R at 9.)

*Morrison* for the following reasons.

First, it is clear from the R&R as a whole that the Magistrate Judge did not rely exclusively on *Morrison* in making her determination. Rather, the only reference to *Morrison* in the R&R is as follows: "Although not bound by the Veteran Administration's decision or assessments, *see* 20 C.F.R. § 404.1504,[5] the ALJ must articulate reasons for his rejection of another agency's decision. This articulation is necessary to permit "reasoned review by the courts." (R&R at 9-10.) (citing *Morrison*, 146 F.3d at 628.) Moreover, as a practical matter, it is clear that the VA evidence in the record is not scant, but rather, it comprises a large portion of record. Accordingly, for the ALJ to dismiss these decisions, it only makes sense that the ALJ should be required to provide sufficient articulation of his reasons for doing so to allow for a meaningful review by the courts, as required by the court in *Morrison*. *See* 146 F.3d at 628.

In response to the Magistrate Judge's reference to *Morrison*, the Commissioner argues that the ALJ did give "reasons for rejecting [the VA assessments], i.e., he essentially determined that the VA assessments were unsupported by other evidence and not conclusive as to the issue of disability until 1992, after the expiration of Plaintiff's insured status." (Obj. at 3.) In his report, to which the Commissioner refers, the ALJ states the following:

> A functional assessment of the claimant was done on January 28, 1998, and the

---

[5] This section provides the following:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.

> examiner opined that the claimant could not be gainfully employed [due to] low back, left leg, and 40 percent disability. He was encouraged to apply for 100 percent disability. *Specific findings as to the claimant's demonstrated ability to lift and carry, sit, stand, bend, squat, etc., are not reported, however, and I give little weight to this "assessment."*

(Tr. at 15.) (emphasis added.) Thus, the Commissioner argues that the ALJ did give reasons for rejecting the VA decisions. However, as the Magistrate Judge states in her R&R:

> In his decision, the ALJ gave "little weight" to the 1988 VA assessment because it did not contain specific findings as to "the claimant's demonstrated ability to lift and carry, sit, stand, bend, squat, etc." The Board, however, *in its 1992 decision specifically noted that the 1988 VA assessment was based on the discomfort experienced by claimant in "performing a number of tasks, which involved activities such as climbing, standing or sitting."* The ALJ did not consider this basis of the Board's 1992 decision but instead summarily dismissed the Board's determination of disability for having been made 3 years after the claimant's last insured date. Notwithstanding the Commissioner's contention that the VA did not find the claimant disabled until 1992, *the Board's 1992 decision can almost be read an as ex post facto determination of the claimant's disability in 1988*. The ALJ's rejection of the Board's decision is simply too cursory considering the critical fact that the Board's conclusion of complete disability was based on assessments of the claimant admittedly made by the VA during the relevant period.

(R&R at 10.) (emphasis added) (internal citations to the record omitted.)

The ALJ's only reference to the 1992 VA assessment is his statement that the claimant was not found " 'unable to secure and follow a substantially gainful occupation' until November 2, 1992." (Tr. at 15.) Thus, as the Magistrate Judge concluded, the only implicit reason given by the ALJ for rejecting the 1992 VA assessment is that it came three years after the claimant's insured status expired. However, it is apparent from a review of the 1992 decision that it is based on assessments of the claimant from the relevant time period. (*See* R&R at 10. ( "[T]he Board's 1992 decision can almost be read an as ex post facto determination of the claimant's disability in 1988.") Accordingly, in light of the evidence underlying the 1992 decision, the ALJ not only erred in failing to consider such evidence, but also erred in failing to provide a sufficient reason for failing to

consider such evidence.

Interestingly, in his Objections, the Commissioner makes no reference to the Magistrate Judge's determination that the ALJ "summarily dismissed" the 1992 decision because it was made three years after the claimant's last insured date. Rather, the Commissioner argues only generally that the ALJ properly discounted the assessments. Ultimately, however, in light of the aforementioned and after a review of the record, including the R&R and the Commissioner's objections, the court agrees with the Magistrate Judge that although the ALJ did in fact reference the VA decisions, and although the ALJ is not bound by the disability rating of another agency, he nevertheless erred in his treatment of these decisions. Specifically, the ALJ erred by failing to consider and discuss the 1992 decision and its underlying evidence, and by instead summarily disregarding it because it was made three years after the claimant was last insured for disability insurance, even though the decision was based on evidence from the relevant time period. Accordingly, the court remands the matter for a thorough reexamination of the VA records, especially the 1992 decision, and for a sufficient articulation of the reasons for accepting or rejecting those records.

## CONCLUSION

It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED**, and the matter is **REMANDED** for the Commissioner to take appropriate action regarding an award of benefits.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**February 14, 2006**